174 Cal.App.4th 653 (2009)
___ Cal.Rptr.3d ___
In re H.H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
H.H., Defendant and Appellant.
No. A122799.
Court of Appeals of California, First District, Division Five.
April 30, 2009.
*655 Melanie Martin Del Campo, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
JONES, P. J. 
Albany Police Officer Ted Allen was patrolling Albany in the late evening when he saw H.H. (the minor) riding a bicycle without proper lighting equipment in violation of the Vehicle Code. Allen detained the minor and asked him to "step from the bicycle." Then he asked the minor to "take off the backpack that [the minor] had on." As the minor took off his backpack, he said, "`I'm not on probation.'" This caused Allen "to wonder why [the minor] would say that." Then the minor said he did not give consent to search. Allen felt the minor's comment regarding consent was "kind of a warning flag as to why someone would say something like that." At that point, Allen became concerned the minor may have had a weapon on his person. Allen patsearched the minor and found a loaded revolver in his jacket.
The juvenile court denied the minor's motion to suppress and he admitted misdemeanor possession of a deadly weapon (Pen. Code, § 12020).[1] At the dispositional hearing, the court adjudged the minor a ward of the court and placed him on probation. On appeal, the minor contends the court erred in denying his motion to suppress because Allen did not have reasonable suspicion to believe he was armed and dangerous.
*656 The question before us is whether the minor's refusal to consent to a search can, by itself, form the basis for reasonable suspicion to patsearch. The answer is no. Our holding is consistent with state and federal court decisions holding that refusal to consent does not create reasonable suspicion to patsearch or probable cause to search. Accordingly, we reverse the lower court's denial of the minor's motion to suppress and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
The facts are taken from the evidence presented at the hearing on the minor's motion to suppress.
At 11:20 p.m. on March 4, 2008, Allen was driving a patrol vehicle in Albany when he saw the minor riding a bicycle without proper lighting equipment in violation of Vehicle Code section 21201, subdivision (d).[2] Allen pulled over, illuminated the minor with his spotlight, and "told him to stop." The minor complied.
Allen asked the minor to "step from the bicycle;" Allen wanted to identify the minor and issue a citation for riding a bicycle without the proper lighting equipment. The minor again complied. Then Allen asked the minor to "take off [his] backpack." The minor took off the backpack; as he did so, he said, "`I'm not on probation.'" This caused Allen "to wonder why [the minor] would say that." Then the minor said he did not give consent to search. According to Allen, the minor's comment regarding consent was "kind of a warning flag as to why someone would say something like that." At that point, Allen became concerned the minor may have had a weapon on his person.
Allen advised the minor that he was going to conduct a patsearch. In response, the minor stated, "`I do not give consent to search.'" The minor's statement did not dissuade Allen because he "felt fearful that [the minor] may have a weapon on him." During the patsearch, Allen felt what he thought was a revolver in the left front chest area of the minor's black, bulky jacket. Allen *657 advised the minor not to "go for the firearm" and called for assistance. At that point, the minor "made a spontaneous statement" that he found the gun some time ago. When additional officers arrived, the minor was arrested and Allen removed the revolver from the minor's jacket.
In June 2008, the People filed a Welfare and Institutions Code section 602 petition alleging the minor possessed a concealed firearm (§ 12021, subd. (a)), carried a firearm without a license (§ 12025, subd. (a)(2)), and carried a loaded firearm while in a public place (§ 12031, subd. (a)(1)). The minor moved to suppress, contending Allen did not have reasonable suspicion to patsearch him. The juvenile court denied the motion. It concluded "the officer's specific articulated reasons for conducting the pat-down search under the circumstances were reasonable . . . ." The minor admitted the misdemeanor charge of possession of a deadly weapon (§ 12020). At the dispositional hearing, the court adjudged the minor a ward of the court and placed him on probation in his father's home.

DISCUSSION

I. Standard of Review

In reviewing the juvenile court's denial of the minor's motion to suppress evidence, "we view the record in the light most favorable to the [juvenile] court's ruling, deferring to those express or implied findings of fact supported by substantial evidence. [Citations.] We independently review the [juvenile] court's application of the law to the facts. [Citation.]" (People v. Jenkins (2000) 22 Cal.4th 900, 969 [95 Cal.Rptr.2d 377, 997 P.2d 1044]; see also In re Lennies H. (2005) 126 Cal.App.4th 1232, 1236 [25 Cal.Rptr.3d 13] [same standard of review applies to juvenile court proceedings].)

II. The Patsearch Was Unlawful

(1) Because the parties agree Allen lawfully detained the minor, the only issue before us is whether Allen had reasonable suspicion to patsearch the minor. The principles surrounding a patsearch are well settled. A limited, protective patsearch for weapons is permissible if the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Terry v. Ohio (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 88 S.Ct. 1868]; see People v. Avila *658 (1997) 58 Cal.App.4th 1069, 1074 [68 Cal.Rptr.2d 432] ["[T]he officer need not be absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger. [Citation.]"].) "`[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search `to determine whether the person is in fact carrying a weapon.' [Citation.] `The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . .' [Citation.]" (Minnesota v. Dickerson (1993) 508 U.S. 366, 373 [124 L.Ed.2d 334, 113 S.Ct. 2130].)
(2) The minor contends the assertion of his Fourth Amendment rights, without more, did not create reasonable suspicion he was armed and dangerous. We agree. "A refusal to consent to a search cannot itself form the basis for reasonable suspicion: `it should go without saying that consideration of such a refusal would violate the Fourth Amendment.' [Citations.] If refusal of consent were a basis for reasonable suspicion, nothing would be left of Fourth Amendment protections. A motorist who consented to a search could be searched; and a motorist who refused consent could be searched, as well." (United States v. Santos (10th Cir. 2005) 403 F.3d 1120, 1125-1126, quoting United States v. Wood (10th Cir. 1997) 106 F.3d 942, 946.)
People v. Dickey (1994) 21 Cal.App.4th 952, 954 [27 Cal.Rptr.2d 44], is instructive. There, the defendant appeared to make "`. . . furtive movements. . . in the driver's seat'" of a car stopped in the middle of the road. (Id. at p. 954.) A law enforcement officer stopped the defendant, who was unable to produce identification and refused to give the officer permission to search the car. (Ibid.) The defendant eventually gave the officer permission to search his backpack, which contained baking powder inside of a film canister. (Id. at pp. 955-956.) At that point, the officer ordered the defendant out of the car, patsearched him, and found cocaine and marijuana. (Ibid.)
The appellate court held that the patsearch "could not be justified based on the fact that [the defendant] (1) had no identification, (2) exercised his Fourth Amendment right and refused to allow the deputy to search the vehicle, (3) was nervous and sweating, (4) or because baking powder was found in a film canister. None of these considerations, considered singly or in combination, *659 would lead an officer to `". . . reasonably believe in the possibility that a weapon may be used against him . . . ."'" (Dickey, supra, 21 Cal.App.4th at p. 956, quoting People v. Lawler (1973) 9 Cal.3d 156, 161 [107 Cal.Rptr. 13, 507 P.2d 621], italics added.)[3]
A majority of federal courts have reached the same conclusion and have held that a defendant's refusal to consent to a search does not create reasonable suspicion to detain or probable cause to search. (United States v. Freeman (10th Cir. 2007) 479 F.3d 743, 749 [police officers did not have reasonable suspicion to search defendant's residence; "[r]efusal to consent to a searcheven agitated refusalis not grounds for reasonable suspicion"]; United States v. Boyce (11th Cir. 2003) 351 F.3d 1102, 1110 [police officer's decision to detain defendant and call drug unit was impermissibly based on defendant's refusal to consent to the search of his car]; United States v. Smith (6th Cir. 2001) 263 F.3d 571, 594 [defendant's refusal to consent to search "is clearly not an appropriate basis for reasonable suspicion"]; United States v. Prescott (9th Cir. 1978) 581 F.2d 1343, 1351 [a defendant's refusal to consent to a search of her apartment should not have been admitted as evidence against her; asserting the Fourth Amendment "cannot be a crime, . . . [n]or can it be evidence of a crime"].)
The People concede that "[s]ome courts have declared that a refusal [to consent] may not be considered, either singly or in combination with other circumstances" as a basis for reasonable suspicion to detain or probable cause to search. They contend, however, "that the form of the assertion of the right to refuse consent may be relevant to the justification for a search" and cite Illinois v. Wardlow (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 120 S.Ct. 673] (Wardlow). In Wardlow, several police cars converged on an area known for heavy narcotics trafficking and saw the defendant standing next to a building holding an opaque bag. (Id. at pp. 121-122.) The defendant looked in the officers' direction and fled. (Id. at p. 122.) The officers detained the defendant, conducted a patsearch, and discovered a gun. (Ibid.)
The United States Supreme Court held the defendant's presence in an area known for drug activity and "his unprovoked flight upon noticing the police" provided reasonable suspicion for the detention. (Wardlow, supra, 528 U.S at *660 p. 124.) The court distinguished a defendant's "unprovoked flight" from a defendant's refusal to cooperate, noting that a defendant's mere "`refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" (Id. at p. 125, quoting Florida v. Bostick (1991) 501 U.S. 429, 437 [115 L.Ed.2d 389, 111 S.Ct. 2382].)
(3) Wardlow does not assist the People because it is factually distinguishable. Here, the minor did not flee from Allen in a high crime area. Moreover, we are not persuaded by the People's attempt to liken the minor's "unprovoked" refusal to consent to unprovoked flight from police. We do not view a defendant's exercise of his Fourth Amendment rights as comparable to unprovoked flight. The minor's refusal to consent did notas the People suggestnecessarily indicate the minor "had something illegal to hide." The minor simply informed the police officer that he would not consent to the search of his backpack or his person.
(4) The People's final argumentthat the "totality of the circumstances justified the search"is not persuasive. Here, the minor was stopped for a traffic infraction, not a crime of violence. (People v. Miranda (1993) 17 Cal.App.4th 917, 927 [21 Cal.Rptr.2d 785].) At the suppression hearing, Allen testified he stopped the minor at approximately 11:30 p.m., but the record is devoid of any evidence about the location of the encounter. In any event, the time and location of the encounter, though relevant, "are insufficient by themselves to cast reasonable suspicion on an individual." (People v. Medina (2003) 110 Cal.App.4th 171, 177 [1 Cal.Rptr.3d 546] [patsearch of driver for officer safety following traffic stop for broken taillight unlawful when based solely on the driver's presence in a high crime area late at night]; see also People v. Limon (1993) 17 Cal.App.4th 524, 534 [21 Cal.Rptr.2d 397].) There is no indication that Allen was outnumbered (People v. Castaneda (1995) 35 Cal.App.4th 1222 [42 Cal.Rptr.2d 18]), or that the minor was dressed in such a way that suggested he was carrying a weapon. (See, e.g., People v. Snyder (1992) 11 Cal.App.4th 389, 393 [13 Cal.Rptr.2d 837].)
We recognize that "[t]he judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations." (Dickey, supra, 21 Cal.App.4th at p. 957.) Here, however, there simply were no specific and articulable facts at the suppression hearing that the minor was armed and dangerous.

*661 DISPOSITION
The dispositional order is reversed. On remand, the juvenile court shall vacate its order denying the suppression motion, enter a new order granting the motion, and allow the minor to withdraw his plea.
Simons, J., and Needham, J., concurred.
NOTES
[1] Unless otherwise noted, all further statutory references are to the Penal Code.
[2] Vehicle Code section 21201 provides in relevant part: "A bicycle operated during darkness upon a highway, a sidewalk . . . or a bikeway . . . shall be equipped with all of the following: [¶] . . . A lamp emitting a white light that, while the bicycle is in motion, illuminates the highway, sidewalk, or bikeway in front of the bicyclist and is visible from a distance of 300 feet in front and from the sides of the bicycle."
[3] In People v. Miller (1972) 7 Cal.3d 219, 225-226 [101 Cal.Rptr. 860, 496 P.2d 1228], the California Supreme Court held that a defendant's refusal to permit the police to seize equipment for "`safekeeping'" did not create probable cause to search. (Id. at pp. 224-225.) The court explained, "[s]uch an argumentformulating `probable cause' from an individual's refusal to consent to a police search or seizurewould directly penalize an individual simply for exercising his constitutional right to be free from unreasonable searches and seizures by police." The court noted that the "state may not transform a defendant's refusal to waive his Fourth Amendment rights into a `suspicious' activity evidencing criminal conduct." (Id. at pp. 225-226.)