Filed 2/2/16  P. v. Joseph CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F070103 |
| Plaintiff and Respondent, | |
| v. | (Kern Super. Ct. No. BF153995A) |
| RENE ANDREW JOSEPH, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  H. A. Staley, Judge; Colette M. Humphrey, Judge.[†]

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

---

[*] Before Levy, Acting P.J., Kane, J. and Poochigian, J.

[†] Judge Staley presided over the *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)) and the motion to suppress (Pen. Code, § 1538.5); Judge Humphrey presided over the sentencing hearing.

-ooOoo-

Appellant/defendant Rene Andrew Joseph pleaded no contest to transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)),[1] admitted an enhancement for a prior narcotics-related conviction, and was sentenced to five years pursuant to a negotiated disposition. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS[2]

At 3:00 a.m. on March 23, 2014, Officers Gross and Burich of the Bakersfield Police Department were on patrol in a marked squad car, traveling eastbound on East 9th Street. Gross saw a man pedaling a bicycle on northbound Sansome Street, and there were no lights on the bicycle. Gross activated the spotlight on the side of his patrol vehicle, and illuminated the man and the bicycle in order to conduct a traffic stop. Gross testified he turned on the patrol car's overhead lights within a few seconds after activating the spotlight. The bicyclist was later identified as defendant; Gross did not know defendant or have contact with him prior to this incident.

Officer Gross testified that just after he turned on the spotlight, defendant used his left hand to drop two black items onto the street. After he dropped the items, defendant continued to ride the bicycle for about 20 more yards and then stopped.

Officer Gross made contact with defendant and ordered him to get off the bicycle. The bicycle had a motor, but defendant had been pedaling it. Gross conducted a patdown search of defendant for weapons. Gross did not find any weapons and did not seize anything from defendant.

---

[1] All further statutory citations are to the Health and Safety Code unless otherwise indicated.

[2] Given defendant's no contest plea, the following facts are from the hearing on defendant's motion to suppress.

2

Officer Gross testified he conducted a records search for defendant and learned he was on parole and had been arrested for narcotics sales. Gross conducted a parole search on defendant and found three cell phones and $445.

While Officer Gross stayed with defendant, Officer Burich retraced defendant's path and found the items he had dropped on the street: a black left-hand glove and a black coin bag. The left-hand glove exactly matched the glove on defendant's right hand. The black coin bag contained two plastic bindles of apparent crystal methamphetamine.

Officer Gross testified one cell phone did not have a passcode, and he examined it as part of the parole search. He found two separate text messages which "referred to someone as G., and one asked if he could drop off a twenty and the other one asked if he could drop off a dime."

**Defense evidence**

Defendant[3] and his friend, Eddie Skinner[4] (Skinner), testified at the suppression hearing. Defendant worked as a manager and security guard at a motel on Union Street. Around 2:00 a.m., defendant was about to leave the motel on his bicycle. Skinner told defendant he could not ride his bicycle at night without lights. Skinner removed the front solid headlight and rear flashing red light from his own bicycle, and placed them on defendant's bicycle. Each light was powered by its own battery, and each light had an on/off button.

Defendant testified he rode away from the motel sometime after 2:30 a.m. Both the front and rear bicycle lights were operable and working. Defendant testified he never turned off the lights that night. Defendant testified the lights were still on when the police car's spotlight and flashing lights were activated.

---

[3] Defendant testified he had "a troubled past" and had prior felony convictions for possession, battery, driving under the influence."

[4] Skinner was impeached with his prior felony convictions for possession.

Robert Moreno (Moreno) lived on Tulare at Ninth Street. He knew defendant as someone who lived in the area. Moreno testified that around 3:00 a.m., he went outside his house because of loud noise from a neighbor's party. Moreno testified defendant rode past his house on the bicycle, and the bicycle's lights were on. Defendant did not stop. They exchanged greetings and defendant kept riding on Tulare. Moreno did not see the police follow defendant. Moreno saw a police car on Union Street as it crossed Tulare. He thought the police were heading to the party disturbance. He saw the police car's flashing lights. Defendant turned on Sansome, and he lost sight of defendant.

Moreno testified the lights were still working on defendant's bicycle when the police car's flashing lights were activated. Moreno did not see the actual traffic stop. He walked down the street to the location of the stop and saw the officers talking to defendant. Moreno testified the bicycle lights were still on.[5]

Defendant testified the officers seized and impounded his bicycle when he was arrested. Five days later, he went to the police department to pick up his bicycle. Defendant testified the rear light was slightly damaged, but both lights were still on, and he took a videotape to show the lights still worked.

**Procedural history**

On June 4, 2014, an information was filed in the Superior Court of Kern County charging defendant with count I, possession of methamphetamine (§ 11377, subd. (a)); count II, transportation of methamphetamine (§ 11379, subd. (a)); and count III, possession of methamphetamine for sale (§ 11378), with three enhancements for having prior narcotics-related convictions (§ 11370.2, subd. (c)); and two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

---

[5] Moreno was impeached with his prior felony convictions for spousal abuse "and something."

**Suppression and *Pitchess* motions**

Defendant filed a motion to suppress the bag that contained the methamphetamine and the evidence seized from him, and argued he was subject to an unlawful detention. The People filed opposition.

Defendant also filed a motion for disclosure of Officer Gross's personnel records pursuant to *Pitchess*, *supra*, 11 Cal.3d 531. The People filed opposition.

On July 9, 2014, the court granted defendant's motion for an in camera hearing pursuant to *Pitchess*. After conducting the in camera hearing, the court advised defendant that it found no discoverable information and denied his *Pitchess* motion.

**Denial of suppression motion**

Also on July 9, 2014, the court conducted an evidentiary hearing on defendant's suppression motion, as set forth above.

The prosecutor argued that the officers had reasonable suspicion to stop defendant for the traffic violation because the bicycle's lights were not on. The prosecutor asserted that defendant could have switched off the lights after he left the motel and drove away from Moreno's house. The prosecutor further argued that defendant abandoned the property that he dropped on the street, and he was properly searched pursuant to his parole status.

Defense counsel argued defendant was detained immediately upon Officer Gross shining his spotlight on him, even though he continued to ride his bicycle for another 20 yards. Defense counsel argued Gross lacked reasonable suspicion to conduct the traffic stop based on the evidence that defendant's bicycle lights were on.

On July 10, 2014, the court denied defendant's suppression motion in a written order. The court held that the property discarded "before the defendant submitted to the traffic stop was discarded and abandoned property." The court found the traffic stop was legal on two grounds. The officer did not see a light "in the 'on' mode on the bicycle and

5

the defendant was driving on the wrong side of the roadway." The court also held "the items seized from the defendant's person were lawfully seized pursuant to a parole search. This includes the search of the stored information on the cell phones."

**Plea and sentence**

On July 18, 2014, defendant pleaded no contest to count II, transportation of methamphetamine, and admitted one section 11370.2, subdivision (c) enhancement. The court dismissed the remaining charges and enhancements.

On September 9, 2014, defendant was sentenced to the lower term of two years for count II, plus three years for the prior drug conviction enhancement, for an aggregate term of five years. The court ordered defendant to serve two years in county jail, and serve the remainder of the term under mandatory supervision, pursuant to the terms of the plea agreement.

On September 15, 2014, defendant filed a timely notice of appeal limited to the denial of his motion to suppress.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court.

On January 6, 2015, this court sent defendant a letter at his last known address and invited him to submit additional briefing. On January 29, 2015, this letter was returned marked "Return to sender; Unable to Forward." On February 11, 2015, this court was advised by defendant's appointed counsel that he had been released to an "out of custody" program with no listed address.

We briefly review the denial of defendant's motion to suppress. A detention may occur when an officer activates his emergency lights depending on the circumstances. (*People v. Brown* (2015) 61 Cal.4th 968, 978–980.) In this case, however, the officer had

6

reasonable suspicion to conduct a traffic stop based on Vehicle Code section 21201, subdivision (d), which states that a bicycle driven in darkness must be equipped with appropriate front and rear lights.  (See, e.g., *In re H.H.* (2009) 174 Cal.App.4th 653, 656–657; *People v. Brown* (1998) 62 Cal.App.4th 493, 495–497.)  While defendant introduced evidence to refute Officer Gross's testimony about the operation of his bicycle lights, such disparities in testimony were resolved by the trial court, and there is substantial evidence to support its credibility determination.  (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

As to the seizure of the discarded methamphetamine, "[i]t is … well established that property is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination…." (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365.)  A defendant's act of dropping a bag "before making a last ditch effort to evade the police supports the trial court's finding that defendant indeed abandoned the paper bag and lost any reasonable expectation of privacy in its contents." (*People v. Brown* (1990) 216 Cal.App.3d 1442, 1451.)  We thus conclude the court properly denied defendant's suppression motion as to the methamphetamine found in the black bag.

As for the officers' search of defendant's cell phone, the California Supreme Court previously held that the police may conduct a warrantless search of a cell phone seized from a person at the time of arrest.  (*People v. Diaz* (2011) 51 Cal.4th 84, 93.)  On June 25, 2014, after the search in this case, but just days before the court conducted the suppression hearing, the United States Supreme Court held that the police may not search data or images contained in cell phones without a warrant in the absence of exigent circumstances.  (*Riley v. California* (2014) 573 U.S. __ [134 S.Ct. 2473, 2485, 2487–2488, 2493–2494].)  At the time the officers searched defendant's cell phone, *Diaz* was binding precedent in California and authorized the search.  The officers reasonably

7

relied on *Diaz* at the time of the search, and the good faith exception precludes application of the exclusionary rule. (*Davis v. United States* (2011) 564 U.S. 229 [131 S.Ct. 2419, 2423–2424] ["Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."].)

In any event, defendant entered his plea to transportation of methamphetamine, based on the officers' observations that he threw the bag of methamphetamine as he was riding the bicycle, a charge which was not based on any evidence from the contents of his cell phone. Thus, to the extent the admission of the cell phone was erroneous, any error was harmless.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.